## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROGER YOUNG,

                      Petitioner,                    Case Number: 2:09-cv-11063
                                                    HON. VICTORIA A. ROBERTS

v.

CINDI CURTIN,

                      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner Roger Young filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. He challenges his first-degree criminal sexual conduct conviction, MICH. COMP. LAWS 750.520(b), imposed by a Wayne County, Michigan circuit court jury. The petition presented seven claims for relief. The Court denied two of those claims because they were not timely filed. *See* ECF No. 27. The Court now denies habeas corpus relief for the remaining claims.

### I. Background

Petitioner's conviction arises from the sexual assault of L.R. on April 27, 2002, at her home. L.R. testified that she had known Petitioner since approximately 1995 or 1996. They engaged in an intimate relationship for five or six years. L.R. wanted their relationship to be exclusive, but she was aware that Petitioner dated other women. In the Fall of 2001, L.R. became aware that another woman named Rhea was pregnant with

Petitioner's child.  L.R. testified that she continued to see Petitioner and accepted his relationships with other women, including Rhea.  At the beginning of April 2002, L.R. began dating someone else and distancing herself from Petitioner.  On April 24, 2002, Petitioner invited L.R. to go for a drive; she agreed.  When Petitioner stopped in L.R.'s driveway after the ride, he noticed she had a hickey on her neck and angrily threw her out of the car.

On April 26, 2002, Petitioner called L.R. several times and asked her to go to spend the weekend in Northern Michigan with him.  He picked her up at approximately 10:00 p.m.  They decided it was too late to begin a long drive and instead they drove around locally for a couple of hours with Petitioner's friend Mario.  Eventually, they dropped Mario off at his house and headed toward L.R.'s house.  As they were driving, Petitioner unexpectedly threw a drink in L.R.'s face.  When she asked him why he did that, Petitioner began hitting her.  L.R. testified that Petitioner hit her in the face and grabbed her by the hair and slammed her face into the dashboard.  L.R. begged for Petitioner to take her back home.  Eventually, he did so.  When they arrived at her home, Petitioner followed her inside, although L.R. did not invite him to do so.  L.R.'s 14-year-old daughter was asleep on the living room couch.  L.R. woke her up and sent her to bed.  L.R. and Petitioner then talked for a while.  He apologized for hitting her, but was angry that she was seeing another man.  When she refused his offer that he perform oral sex on her, Petitioner punched L.R. in the face.  L.R. ran toward the kitchen.  Petitioner grabbed her by the neck and banged her face on the kitchen table.  L.R. testified that Petitioner

2

then had intercourse with her.

After Petitioner left, L.R. called her brother-in-law, who is a police officer. Her sister and brother-in-law came to her house and called the police. Later that morning, L.R. went to a hospital, where she was examined and a rape kit performed.

A couple of weeks later, Petitioner contacted her and said that "she shouldn't do this to him." ECF No. 11-10, Pg. ID 96. L.R. hung up on Petitioner. She was troubled by the phone call and contacted the officer in charge of the case, Sergeant Bulgarelli. Sergeant Bulgarelli had been trying to locate Petitioner, but had been unsuccessful. In September 2002, L.R. told Petitioner she had agreed to drop the charges and agreed to meet with Petitioner in person. She testified that she did not intend to drop the charges, but told Petitioner she would in an attempt to entice him to come out of hiding so that he could be arrested. Petitioner was eventually arrested in October 2002. In February 2003, Petitioner sent L.R. a letter, which she read into the record. In the letter, Petitioner admitted to physically assaulting L.R., but denied sexually assaulting her. He also threatened that if she did not drop the charges, he would reveal embarrassing information about her past.

Joanne McCall was qualified as an expert in forensic nurse examination. She testified that she examined L.R. at approximately 2:30 p.m. on April 27, 2002. She observed a bruise and hematoma on L.R.'s head, a bruised and swollen right eye, blood in the sclera of the left eye, swelling along the lip line to the left jawbone, a cut inside her upper lip and bruising around L.R.'s neck. L.R. had a scrape on her left shin and her right

3

arm was bruised and swollen.  McCall collected samples for forensic evaluation.

Paula Lytle, a forensic laboratory manager for the Detroit Police Crime Laboratory, testified as an expert in forensic serology, trace evidence, and DNA analysis. She analyzed sperms cells detected on swabs from L.R.'s rape kit.  She determined that the DNA profile of the sperm cells detected on L.R.'s vaginal and internal genitalia swab were consistent with Petitioner's DNA profile.

Petitioner testified in his own defense.  He testified that, in April 2002, he was involved in relationships with L.R. and a woman named Rhea Cope.  On the evening of April 26, 2002, he and L.R. drove around drinking liquor and smoking marijuana.  They stopped at Petitioner's house.  While he was on the telephone, L.R. went to his bedroom and undressed.  He testified that, when he got off the phone, they had sexual intercourse. Petitioner and L.R. then gave Petitioner's friend, Mario Simmons, a ride to Simmons' girlfriend's house.  On the way, Petitioner and L.R. purchased more liquor.  After dropping Mario off, Petitioner headed toward L.R.'s house.  On the way, L.R. made disparaging comments about Petitioner's newborn daughter and crumpled up a picture of the baby.  Petitioner testified that, in response, he hit L.R. in the face, arms and legs.  He denied slamming her head into the dashboard.  Petitioner testified he then drove L.R. home and did not go inside her home when he dropped her off.

## II.  Procedural History

Petitioner was convicted by a Wayne County Circuit Court jury of first-degree criminal sexual conduct.  On April 29, 2003, he was sentenced as a fourth habitual

offender to twenty-two to forty years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims through counsel: (i) insufficient evidence presented to show force or coercion; (ii) insufficient evidence presented to show bodily injury; (iii) the trial court denied Petitioner the right to present a defense by suppressing relevant evidence or prior sexual contact between Petitioner and the victim; and (iv) defense counsel was ineffective for declining an instruction on the affirmative defense of consent.  He raised these claims in a pro per supplemental brief: (i) sentence was disproportionate; (ii) prosecutor engaged in misconduct; and (iii) trial court was biased in favor of the prosecution.  The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Young*, 2004 WL 210239 (Mich. Ct. App. Sept. 21, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Young*, 472 Mich. 937 (Mich. June 28, 2005).

Petitioner returned to the trial court to file a motion for relief from judgment.  He raised these claims: (i) denied right to due process by circuit court's failure to properly arraign Petitioner; (ii) trial court improperly amended the complaint; (iii) trial counsel was ineffective for failing to file a motion to dismiss; (iv) appellate counsel was ineffective; (v) ineffective assistance of trial counsel; and (vi) Petitioner's rights under the Confrontation Clause were violated by introduction of testimonial hearsay statements. The trial court denied the motion.  5/23/07 Opinion, *People v. Young*, No. 02-014742,

ECF No. 11-23 Pg. ID 1995-2002.

Petitioner sought leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Young*, No. 281435 (Mich. Ct. App. Apr. 15, 2008); *People v. Young*, 482 Mich. 1030 (Mich. Oct. 27, 2008). The Michigan Supreme Court also denied Petitioner's motion for reconsideration. *People v. Young*, 483 Mich. 883 (Jan. 27, 2009).

On March 2, 2009, Petitioner filed a petition for writ of habeas corpus. He then moved to stay the petition so that he could file a second motion for relief from judgment in the trial court. The Court granted the motion on June 23, 2010. *See* ECF No. 15. Petitioner filed a second motion for relief from judgment on August 10, 2010. The motion was denied on September 21, 2012. Order, *People v. Young*, No. 02-014742-01, ECF No. 24-14 Pg. ID 2983-84. Both state appellate courts denied Petitioner leave to appeal the trial court's decision. *People v. Young*, No. 315348 (Mich. Ct. App. Aug. 29, 2013); *People v. Young*, 495 Mich. 947 (Mich. Feb. 28, 2014).

Petitioner then returned to this Court and moved to reopen this habeas corpus proceeding. The Court granted the request and the matter was reopened on August 4, 2014. Petitioner raises these claims in his amended petition:

I.    Petitioner was deprived of his constitutional right to a fair trial where the prosecution failed to present sufficient evidence to prove, beyond a reasonable doubt, force or coercion, or bodily injury on the criminal sexual conduct charge requiring a new trial.

6

II.     Petitioner was denied his constitutional right to a fair trial and to present a valid defense where he was denied a right to confront and cross examine the victim about her prior sexual acts, and where the detective and prosecutor forced the victim to pursue a false rape charge against Petitioner requiring a new trial.

III.    Petitioner was denied his constitutional right to the effective assistance of counsel where defense counsel: (1) declined a consent jury instruction which was part of the defense strategy; (2) failed to introduce the cassette recording tapes establishing actual innocence of CSC; and (3) failed to call all defense alibi witnesses for the defense, requiring a new trial.

IV.     Petitioner was denied his right to due process of law where the state courts erred by denying relief on the newly discovered evidence claim related to the closure of the Detroit Police Crime Lab.

V.      Petitioner is entitled to habeas relief where newly discovered evidence establishes his actual innocence and but for the constitutional violations at trial, the use of perjury and defense counsel's ineffectiveness, the jury would not have convicted him of CSC, which amounts to a fundamental miscarriage of justice.

VI.     Petitioner is entitled to habeas relief where the cumulative effect of all the constitutional errors combined served to deny fundamental due process and a fair trial requiring reversal.

VII.    Petitioner was denied his constitutional right to a direct appeal where his appellate attorney was ineffective for failing to investigate the case and present the claims asserted in the post-conviction proceedings, which requires a new appeal of right.

Respondent filed a motion for summary judgment, arguing that all of Petitioner's claims were untimely. The Court held that Petitioner's fourth and fifth claims for habeas corpus relief were untimely and granted the motion for summary judgment as to these claims. The Court denied summary judgment with respect to the remaining claims.

**III.  Discussion**

7

## A.  Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408.  A

federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

8

'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979)) (Stevens, J., concurring)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, – U.S. –, 131 S.Ct. 1388, 1398 (2011).

**B.    Petitioner's Request to Hold Petition in Abeyance (ECF No. 30) and Request for Reconsideration (ECF No. 29)**

Petitioner has filed a request to hold these proceedings in abeyance to allow him to return to state court to raise a new claim of unlawful sentencing under the Michigan Supreme Court's recent decision in *People v. Lockridge*, 498 Mich. 358 (Mich. July 29, 2015) (holding that Michigan's sentencing guideline scheme violates the Sixth Amendment). A federal district court has discretion to stay a habeas petition to allow a petitioner to present unexhausted claims to the state courts in the first instance and then return to federal court on a perfected petition. *See Rhines v. Weber*, 544 U.S. 269, 276 (2005). However, stay and abeyance is available only in "limited circumstances" when the petitioner has "good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in

intentionally dilatory litigation tactics." *Id.* at 278 (*citing Rose v. Lundy*, 455 U.S. 509, 522 (1982)).

With respect to Petitioner's sentencing claim, the Michigan Supreme Court only made its holding in *Lockridge* applicable to cases still "pending on direct review." *Id.* at 25-26. Further, this Court is not bound by the Michigan Supreme Court's interpretation of *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the case on which *Lockridge* holding is based. The law in the Sixth Circuit is that *Alleyne* does not apply retroactively. *In re Mazzio*, 756 F.3d 487, 491 (6th Cir. 2014) ("*Alleyne* does not apply retroactively to cases on collateral review."). Therefore Petitioner has not demonstrated that his sentencing claim is not plainly meritless, and the Court denies a stay.

Also before the Court is Petitioner's request for reconsideration of the Court's Order granting in part and denying in part Respondent's motion for summary judgment. Dkt. 27. The Court held that Petitioner's fourth and fifth claims for habeas relief were untimely and granted Respondent summary judgment with respect to those claims.

Motions for reconsideration may be granted when the moving party shows (1) a "palpable defect," (2) by which the court and the parties were misled, and (3) the correction of which will result in a different disposition of the case. E.D. Mich. L.R. 7.1(h)(3). A "palpable defect" is a "defect which is obvious, clear, unmistakable, manifest or plain." *Olson v. The Home Depot*, 321 F. Supp. 2d 872, 874 (E.D. Mich. 2004). A motion predicated upon such argument fails to allege sufficient grounds upon which to grant reconsideration. L.R. 7.1(h)(3); *see also Meekison v. Ohio Dept. of*

11

*Rehabilitation and Correction*, 181 F.R.D. 571, 572 (S.D. Ohio 1998). Petitioner fails to demonstrate that the Court's decision was based upon a palpable defect by which the Court was misled and the Court will deny the motion.

### C. Claim One: Sufficiency of the Evidence

In his first habeas claim, Petitioner argues that insufficient evidence was presented to establish two elements of first-degree criminal sexual conduct: that he overcame the victim by force or coercion and that she suffered physical injury.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), quoting *Jackson*, 443 U.S. at 324 n.16.

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any

12

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789.  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, a person is guilty of first-degree criminal sexual conduct "if he engages in sexual penetration with another person using force or coercion and causes personal injury to the other person."  *Young*, 2004 WL 2102039 at *1 (citing *People v. Perkins*, 468 Mich. 448, 453 (2003)).  "Force and coercion" includes "when the actor overcomes the victim through the actual application of physical force or physical violence."  MICH. COMP. LAWS  § 750.520b(f)(i).  "Personal injury" is defined as " bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ."  MICH. COMP. LAWS § 750.520a(n).

The Michigan Court of Appeals held that sufficient evidence was presented to establish both force or coercion and personal injury based upon this testimony from the victim: Petitioner punched her in the mouth immediately before the sexual assault, followed her into the kitchen, grabbed her neck, and forced her face-down onto the kitchen table.  *Young*, 2004 WL 2102039 at*1.  Petitioner then stood her against the kitchen counter and, with his hands still around her neck, penetrated her without her consent.  *Id.*

13

"A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010), (quoting *Jackson*, 443 U.S. at 326). Assuming, as this Court must, that the jury found the victim's testimony credible, the evidence presented at trial allowed the factfinder to determine beyond a reasonable doubt that Petitioner used force or coercion to penetrate the victim and that the victim suffered physical injury. Habeas relief is not warranted on this claim.

### D.    Claim Two: Right to Present a Defense and Prosecutorial Misconduct

Petitioner's second claim for habeas relief raises two unrelated claims. First, Petitioner argues that the trial court denied him his right to present a defense when it limited his ability to cross-examine the victim regarding her prior sexual conduct. Second, he claims that the prosecutor committed misconduct by suppressing evidence that the victim was forced into pursuing false rape charges by the detective in charge of the case.

Petitioner's claim that the trial court violated his right to present a defense arises from the trial court's ruling regarding a letter written by Petitioner to the victim about the criminal proceedings. In the letter, Petitioner referenced his and the victim's alleged past

14

sexual activity and money that the victim received from a battered woman's shelter. *Young*, 2004 WL 210239 at *1. The trial court found the letter admissible but held that, if the victim denied the allegations in the letter, the defense would not be permitted to impeach her because those matters were irrelevant to the criminal proceeding. *Id.*

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). While the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 307 (1998). "A defendant's right to present a 'complete' defense ... does not automatically trump state evidentiary rules." *Rockwell v. Yukins,* 341 F.3d 507, 513 (6th Cir. 2003). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)). A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (*quoting Scheffer*, 523 U.S. at 315).

The Michigan Court of Appeals held that the trial court acted reasonably in

15

declining to admit extrinsic evidence to impeach the victim on a collateral matter. *Young*, 2014 WL 2102039 at *1-2. The state court's decision to bar exploration of the victim's prior relationships and payments she may have received from a battered woman's shelter arose from legitimate concerns to avoid unnecessary confusion regarding a collateral matter. The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

Petitioner also claims that the prosecutor suppressed evidence that a lead detective forced the victim into pursuing false rape charges. Respondent argues that this claim is unexhausted and, because no avenue remains for exhaustion, procedurally defaulted.

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "independent and adequate." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial,

16

it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather v. Rees*, 822 F.2d 1418, 1420, n.3 (6th Cir. 1987). If a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). However, a petitioner will not be allowed to present unexhausted claims unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Id.* at 1196, *citing Coleman*, 501 U.S. at 750-51.

Petitioner has not fairly presented this prosecutorial misconduct claim to the Michigan Court of Appeals or Michigan Supreme Court. The claim, therefore, is unexhausted. No state court remedy is available to Petitioner to exhaust this claim because he already has filed two motions for relief from judgment in the state trial court and does not argue that his claims fall within the narrow exception to the prohibition

17

against filing successive motions for relief from judgment in state court. Petitioner fails

to show cause to excuse this default. Thus, this claim is procedurally defaulted and

barred from review unless Petitioner can establish that a constitutional error resulted in a

fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The

Supreme Court has tied the miscarriage of justice exception to procedural default to a

petitioner's innocence. *Id.* To make a showing of actual innocence, "a petitioner must

show that it is more likely than not that no reasonable juror would have found the

petitioner guilty beyond a reasonable doubt." *Id.* at 327. Petitioner fails to present new,

reliable evidence in light of which no reasonable juror would have found him guilty.

Therefore, this claim is procedurally barred.

### E.  Claim three: Ineffective Assistance of Trial Counsel

Petitioner raises three ineffective assistance of counsel claims. He argues counsel

was ineffective in declining a jury instruction on the defense of consent, failing to

introduce a tape recording that would have shown his innocence, and failing to call all

defense alibi witnesses.

A violation of the Sixth Amendment right to effective assistance of counsel is

established where an attorney's performance was deficient and the deficient performance

prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An

attorney's performance is deficient if "counsel's representation fell below an objective

standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the

18

defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'*s* deferential standard." *Id.*

First, Petitioner argues that counsel was ineffective in declining a jury instruction on the defense of consent. Although the Supreme Court in *Strickland* discussed the

performance prong of an ineffectiveness claim before the prejudice prong, the Court made clear that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. The Supreme Court instructed that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* In the case at bar, the Court concludes that it is easier to address the prejudice prong first.

Petitioner cannot show prejudice. The jury was instructed of the elements of first-degree criminal sexual conduct, including that the Petitioner engaged in an act of sexual penetration through force or coercion. *See* ECF #11-12, Pg. ID 1334. This "instruction 'implicitly required the jury to find that the complainant did not consent to sexual intercourse before it could find defendant guilty.'" *People v. Matuszak*, 263 Mich.App. 42, 59, 687 N.W.2d 342, 353 (2004) (quoting *People v. Johnson*, 128 Mich.App. 618, 623, 341 N.W.2d 160, 163 (1983)). The jury, therefore, could not have found Petitioner guilty of first-degree criminal sexual conduct if it believed the victim consented to the act of sexual penetration. Thus, Petitioner cannot show a reasonable probability that the result of the proceeding would have been different had a consent instruction been given.

Second, Petitioner argues that counsel was ineffective in failing to introduce into evidence a tape recording of conversations between Petitioner and L.R. which Petitioner claims would have established that L.R. was fabricating the rape story. Respondent

20

argues that this and the following ineffective assistance of counsel claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

Petitioner raised the issue of the tape recording at sentencing. His attorney was aware of the tape recording prior to trial and concluded that the tape recording was inadmissible. The trial court listened to the tape and held that the taped conversations were "replete with references that would not have made those tapes admiss[i]ble in any way shape form or fashion." ECF No. 11-14, Pg. ID 1378-79. Counsel was not ineffective in failing to move for the admission of inadmissible evidence.

Petitioner argues that counsel failed to present a quality defense because he did not call Detective Bulgarelli to testify that L.R. told him she was not raped by Petitioner, did not elicit favorable testimony from defense witnesses Lonnie Hampton and Kenneth London, did not call defense witness Tyria Scott to testify. The victim testified that she did not tell Detective Bulgarelli that Petitioner did not rape her. Petitioner offers no affidavit to show what Detective Bulgarelli's testimony would have been. Petitioner's

21

self-serving statement that Detective Bulgarelli would have given testimony contrary to the victim's is insufficient to show that counsel was ineffective.

Petitioner next argues that defense counsel was ineffective in failing to elicit testimony from Petitioner's roommate, Lonnie Hampton, that the victim had group sex with Hampton and Petitioner, had other sexual partners, and was very upset when she found out that Petitioner was having a baby with another woman. Petitioner fails to show the relevance of this testimony. It would have been reasonable for a reasonably competent attorney to conclude that this testimony was inadmissible. Petitioner's argument that counsel was ineffective in failing to elicit testimony from Kenneth London that he heard the victim tell Petitioner that the rape had not occurred is similarly meritless. The trial court record shows that counsel engaged in an extensive colloquy with the trial court judge regarding the admissibility of testimony by London about what the victim said. The trial court ruled the testimony inadmissible. Counsel raised the issue and effectively argued his position. This ineffective assistance of counsel claim is meritless.

## F.  Claim VI: Cumulative Effect of Alleged Errors

Petitioner alleges that he is entitled to habeas relief because the cumulative effect of the alleged errors deprived him of a fair trial and due process of law. On habeas review, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005)). Therefore, Petitioner is not entitled to relief on this claim.

22

### G.  Claim VII: Ineffective Assistance of Appellate Counsel

Finally, Petitioner argues that his appellate counsel was ineffective in failing to raise on direct appeal a claim that the victim was coerced by the lead detective to provide false testimony, and failing to present Petitioner's ineffective assistance of counsel claims regarding the consent instruction, the failure to call certain witnesses, and the failure to impeach witness McCall's testimony.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail ... is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and citations omitted).

In denying Petitioner's first motion for relief from judgment, the trial court denied Petitioner's ineffective assistance of appellate counsel claim.  *See* Order, *People v. Young*, No. 02-014742-01, ECF No. 11-22, Pg. ID 64-71.  Petitioner has failed to show that any of the claims he argues counsel should have raised were meritorious.  Therefore, he cannot show that he was prejudiced by counsel's failure to raise these claims on direct review.   "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'"  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir.2001)).  Habeas relief is denied on this claim.

23

## IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## V.  Conclusion

The petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

Petitioner's request to hold petition in abeyance (ECF No. 30) and request for reconsideration (ECF No. 29) are **DENIED.**

**SO ORDERED**.

S/Victoria A. Roberts
VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

DATE: January 26,2016

24